IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| Plaintiff/Respondent, § | |
| § | |
| V. § | CR. No. C-01-135 |
| § | C.A. No. C-06-386 |
| CHARLES ANTHONY FANTOZZI, § | |
| Defendant/Movant. § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
<u>ORDER DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Charles Anthony Fantozzi's ("Fantozzi") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 72.)[1] Also before the Court is the government's response, which moves for the dismissal of Fantozzi's motion. (D.E. 75, 76.) On January 22, 2007, Fantozzi filed a reply (D.E. 79), which the Court has also considered. For the reasons set forth below, Fantozzi's § 2255 motion is DENIED. Additionally, the Court DENIES Fantozzi a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II. BACKGROUND**

**A.   <u>Facts of the Offense</u>[2]**

On February 6, 2000, Fantozzi was the driver and sole occupant of a U-haul truck that entered the Falfurrias, Texas Border Patrol Checkpoint. During the initial interview, he appeared nervous and

---

[1] Docket entry references are to the criminal case, Cr. No. C-01-135.

[2] These facts are taken from Fantozzi's Presentence Investigation Report ("PSR") at ¶¶ 3-6.

1

would not make eye contact with agents. He identified himself and told agents that he was moving his girlfriend's belongings to Greenville, South Carolina.

A canine subsequently alerted to the vehicle, and Fantozzi was referred to the secondary inspection area. While in secondary inspection, agents located a false compartment in the front wall of the cargo area. Inside the compartment, agents found 243 bundles of marijuana with a net weight of 365 kilograms. The net weight was calculated by subtracting ten percent of the gross weight, which was 405 kilograms, to account for packaging.

Fantozzi was arrested. After receiving his Miranda warnings, Fantozzi advised agents that he had been contacted by an individual in Florida, who asked Fantozzi to drive a load of marijuana from Texas to South Carolina, in exchange for a $500 payment. He had flown to Harlingen, Texas from Florida on December 6, 2000. He took a taxi cab to McAllen, Texas, where he met two Hispanic males at a hotel. Those two males took him to rent the truck. They then left Fantozzi at the hotel and took the U-Haul truck from the hotel. They returned it on December 11, 2000, instructed him as to what route to take, and told him to call once he got through the checkpoint. He was told to contact one of them once he cleared the checkpoint, then to continue to a motel in South Carolina. Once he arrived, he should call "Michelle."

**B.      Criminal Proceedings**

On April 26, 2001, Fantozzi was charged in a single-count indictment with possession with intent to distribute approximately 405 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 1.) On December 3, 2001, Fantozzi pleaded guilty to the indictment pursuant to a written plea agreement. (D.E. 17, 18.)

Pursuant to the Court's instructions, the probation department prepared a Presentence Investigation Report ("PSR"). (D.E. 19.) The PSR calculated Fantozzi's base offense level to be 26, based on the 365 kilograms of marijuana. (PSR at ¶ 11.) The PSR further determined, however, that

he was a career offender based on two of his prior convictions, one for burglary of a dwelling and one for false imprisonment. (PSR at ¶ 19.) Thus, the PSR determined that his offense level should be 34 instead of 26, pursuant to U.S.S.G. § 4B1.1. (PSR at ¶ 19.)[3] With the three-level adjustment for acceptance of responsibility, the PSR determined that his total offense level should be 31. (PSR at ¶¶ 20-21.) Fantozzi's extensive criminal history resulted in 52 criminal history points, establishing a criminal history category of VI. (PSR at ¶ 55.) Additionally, because of his status as a career offender, Fantozzi's criminal history category would have been a VI regardless of the number of criminal history points he had. (PSR at ¶ 55.) The resulting guideline range was 188 to 235 months. (PSR at ¶ 92.)

Fantozzi, through counsel, filed several documents objecting to various portions of the PSR. First, he objected to the finding that he was a career offender. (D.E. 20, 21.) In particular, he claimed that his criminal history did not consist of offenses described as crimes of violence and that he did not have two prior felony convictions for controlled substances. Second, he asserted that he did not commit the offenses or engage in the conduct described in paragraphs 37, 56, 59, 60, 61, and 62 of the revised PSR.[4] Instead, he claimed that it was his brother who committed those offenses or conduct. (D.E. 21.) He also objected to paragraph 52, which describes his conviction for indecent exposure and false imprisonment with a fourteen-year old victim. In his objections, he claimed that he was convicted only of indecent exposure and not false imprisonment. He also challenged the facts described in the paragraph as not being true. (D.E. 21 at 2.) On the day before sentencing, March 5, 2002, Fantozzi filed his second amended objections to the PSR. Specifically, he objected to the

---

[3] All references herein to the United States Sentencing Guidelines are to the 2001 edition, which was utilized in Fantozzi's case. (PSR at ¶ 10.)

[4] Fantozzi objected to different paragraph numbers, but those numbers changed with revisions to the PSR. The paragraph numbers listed herein are from the final PSR, used by the Court at sentencing and reflect the offenses that Fantozzi referenced in his objections.

PSR's suggestion that the Court may want to upwardly depart because the seriousness of Fantozzi's criminal history was not adequately represented by category VI. (D.E. 27.) Fantozzi argued again that his brother was the actual perpetrator in several of the offenses in the report and pointed out that many of his convictions were over 15 years old. He described himself as merely a "petty thieve [sic]." (D.E. 27 at 2.)

At sentencing, there was extensive discussion and argument as to all of Fantozzi's objections. Additionally, the Court allowed Fantozzi to explain a number of his prior convictions to the Court, and also heard character testimony from Fantozzi's fiancee. The Court first overruled Fantozzi's objections to the career offender enhancement, finding that he had the predicate offenses to be considered a career offender under U.S.S.G. § 4B1.1. (D.E. 36, Sentencing Transcript ("S. Tr.") at 17.) The Court then went through his criminal history listed in the PSR, asking Fantozzi about each paragraph.

Based on its conversations with Fantozzi and the responses, the Court did not assess the criminal history point for the conviction in Paragraph 37, which was for exposure of sexual organs. Fantozzi alleged that this offense was committed by his brother. The Probation Officer informed the Court that the brother had told them it was his conviction, not Fantozzi's. The Probation Officer also told the Court that there were no fingerprints to confirm that the offense was committed by the defendant. The Court also sustained Fantozzi's objections to Paragraphs 59, 60, 61, and 62, all of which describe arrests and none of which were scored. (S. Tr. at 38-39.) Finally, the Court stated that it would disregard the conduct referenced in Paragraph 76. (S. Tr. at 42-44.) Even with these revisions, Fantozzi had 51 criminal history points and many other unscored convictions and other criminal conduct. (S. Tr. at 44-45.)

Consistent with its obligations in the plea agreement, the government recommended the low end of the guidelines. (S. Tr. at 57.) The government also moved for a downward departure, asking

4

for a reduction of fifty percent off the low end of the guidelines, i.e. one-half of the 188 months, or 94 months. (S. Tr. at 57.) Defense counsel recommended the same. (S. Tr. at 58.) The Court, however, indicated its intent to upwardly depart, explaining:

> I'm looking at an upward departure. And, I mean, I don't see how I can do otherwise with this kind of criminal history. It's almost astonishing in its depth and breadth. 39 – 38 more points than needed to be a Criminal History Category 6, and six burglaries to structures, firearms, forgeries, cocaine, marijuana, false imprisonment, indecent exposure with a 14-year old, this is somebody who's dangerous.

(S. Tr. at 57.) Thus, while the Court agreed to give Fantozzi a reduction pursuant to the government's motion to depart, it first upwardly departed. Specifically, the Court departed upward one offense level, to an offense level of 32 and criminal history category VI, and determined that the appropriate sentence was the high end of that guideline range, or 262 months.

The Court explained its reasoning:

> THE COURT: In looking at an upward departure, I'm supposed to look at the nature of the prior offenses, rather than just simply your number, which is certainly more indicative of the seriousness of the offense. And in this particular history, you have six burglaries to structures or buildings; one burglary to a dwelling – in fact, more than that, but they were reduced; using a minor to break into three homes, actually four homes, false imprisonment, possession of marijuana; attempted possession of cocaine; firearm conviction; the indecent exposure – the false imprisonment to a 14-year old.
>
> . . .
>
> I don't think that a 32/6 even approaches your criminal history. Your particular situation certainly falls outside the heartland of cases that the guidelines contemplated when they were looking at a Total Offense Level 31 and a Criminal History Category 6. So I'm going to look upward. And I don't think a 32/6 adequately represents your criminal history, but that's the one I'm going to stay with.

(S. Tr. at 67-68.)

After imposing the upward departure, the Court then downwardly departed pursuant to the government's motion, to 150 months. (S. Tr. at 68-69.) The Court imposed a five-year term of

5

supervised release, and also imposed a $100 fine and $100 special assessment. (S. Tr. at 69.) Judgment was entered on March 14, 2002. (D.E. 29.)

On June 16, 2003, Fantozzi filed a motion for relief under 28 U.S.C. § 2255 (D.E. 33), which this Court denied. (D.E. 41.)  On October 31, 2003, this Court also denied his motion for reconsideration. (D.E. 46.) Fantozzi appealed. (D.E. 44.) On appeal, the Fifth Circuit held that a motion for *in forma pauperis* status filed by Fantozzi on March 15, 2002, should be construed as a timely notice of appeal from his underlying criminal conviction and sentence. (D.E. 48 at 2). Based on that conclusion, the appellate court vacated this Court's order denying 28 U.S.C. § 2255 relief and judgment entered on September 24, 2003 (D.E. 41, 42), and also vacated the order denying Fantozzi's motion for reconsideration entered on October 31, 2003 (D.E. 46). (D.E. 48.)

Pursuant to the Fifth Circuit's instructions, this Court dismissed Fantozzi's § 2255 motion without prejudice and construed his March 15, 2002 *in forma pauperis* motion as a timely notice of direct appeal from his criminal judgment. (D.E. 50.) The Court also granted him leave to appeal *in forma pauperis* and appointed him counsel. (D.E. 50, 51.) The Fifth Circuit affirmed Fantozzi's conviction and sentence in an unpublished *per curiam* opinion issued on May 25, 2005. (D.E. 62; United States v. Fantozzi, No. 04-40700 (5th Cir. May 25, 2005).) Fantozzi filed a petition for writ of certiorari, which the Supreme Court denied on October 3, 2005. Fantozzi v. United States, 126 S. Ct. 314 (2005).

The Clerk received Fantozzi's § 2255 motion on September 5, 2006. (D.E. 72.) It is timely.

### III. MOVANT'S ALLEGATIONS

Fantozzi lists four grounds for relief in his motion. First, he claims that his guilty plea was unknowing or not made voluntarily with an understanding of the charge and consequences of the plea. In particular, he argues that the government could not have proved the charge against him because he did not know the precise type of contraband he was carrying. He claims that the government admitted

6

in open court that it could not have proved Fantozzi knew he was transporting marijuana and thus, the government was knowingly prosecuting an innocent man. (D.E.72 at 7-9.)

Second, he argues that his counsel was constitutionally ineffective because he advised him to plead guilty, even though there was "overwhelming evidence that supported [Fantozzi's] innocence." (D.E. 72 at 10.) He relies on a taped conversation with the individual who hired him to drive the U-Haul truck, which confirmed that Fantozzi did not know precisely what type of drug he was hauling. He also claims that, after reviewing the taped conversation, he was released from custody. He relies on this fact as evidence that the agents were convinced that Fantozzi had "unwittingly been used as a pawn in the drug trafficking crime." (D.E. 72 at 11.) He asserts that, had his counsel properly investigated the charged offense and informed him that the government would have to prove he knew he was transporting marijuana, he would have insisted on a trial instead of pleading guilty.

In his third ground for relief, he claims that his appellate counsel, Albert Pena, was constitutionally ineffective because Pena failed to raise specific grounds for relief that Fantozzi had asked him to raise on appeal. Specifically, Fantozzi claims that Pena should have raised an actual innocence claim, an ineffective assistance of trial counsel claim, and a claim that the court erroneously used a non-violent prior conviction to sentence him as a career offender under U.S.S.G. § 4B1.1. (D.E. 72 at 13-14.)[5] Fantozzi further claims that he has had conversations with Pena in which Pena

---

[5] In his reply to the government's motion to dismiss, Fantozzi he states that he "withdraws any argument concerning the use of a non violent crime to sentence him under the Career Offender enhancement." (D.E. 79 at 8.) Thus, it is not necessary for the Court to address this argument. In any event, it is not a claim that was likely to succeed had he not withdrawn it. Even if his counsel had challenged the career offender status on appeal, it probably would not have been successful. That is, to the extent Fantozzi claims that his prior conviction for false imprisonment was not a crime of violence for purposes of U.S.S.G. § 4B1.1 and §4B1.2, similar arguments have been rejected by the Fifth Circuit and other circuit courts. See United States v. Riva, 440 F.3d 722, 724-25 (5th Cir. 2006) (prior state conviction for unlawful restraint of person under 17 constituted a "crime of violence" supporting a career offender enhancement); id. at 724 n.5 (citing authority from other circuits for the proposition that unlawful restraint, kidnapping and false imprisonment by deception constitute crimes of violence because, by their nature, they present a serious potential risk of physical injury to the victim).

admitted that he had rendered ineffective assistance of counsel. (D.E. 72 at 14.) In his reply to the government's motion to dismiss, Fantozzi adds two additional arguments that he contends his counsel should have raised on appeal. Specifically, he claims that his counsel should have argued that the government breached the agreed-upon plea agreement by not recommending a sentence at the low end of the guidelines and that this Court "did not hold to it's [sic] agreed upon 50% Fifty Percent sentence reduction under 5K1.1." (D.E. 79 at 7-8.)

Fourth and finally, Fantozzi argues that the Assistant United States Attorney who prosecuted him knowingly used inconsistent and perjured testimony to obtain an indictment against him. (D.E. 72 at 15.) He argues that, in order to indict him, the government relied upon the testimony of the man who hired Fantozzi to drive the U-Haul truck to indict him, but that the same man had previously exonerated Fantozzi in the taped conversation by acknowledging that Fantozzi did not know what drug he was transporting.

As discussed in detail herein, Fantozzi is not entitled to relief on any of his claims.

## IV. DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

8

**B.**	**<u>Fantozzi's Claim of "Actual Innocence"</u>**

Most of Fantozzi's claims are premised on his argument that he is actually innocent of the crime of conviction because he did not know he was carrying marijuana in the U-Haul truck. As discussed herein, Fantozzi misunderstands the law on this issue.

During the rearraignment, the prosecutor offered a recitation of the facts the government would offer to support a finding of Fantozzi's guilt. These facts included the facts that Fantozzi was the driver and sole occupant of a U-Haul cargo-type truck entering the Falfurrias checkpoint on or about December 11, 2000, and that, after an canine alerted and the vehicle was referred to secondary, agents found 243 bundles of marijuana. (D.E. 35, R. Tr. at 25-27.) The prosecutor continued:

> Mr. Fantozzi was arrested. He was given his Miranda rights, and he made some statements. He said that he was contacted in Florida and asked if he wanted to make some money. The person said that they needed a driver to come to Texas and drive a U-Haul back to South Carolina. He said that he was told that he would receive $500, and he would be flown from Texas – flown to Texas to pick up the truck. In fact, he did – he was flown to Harlingen and he was picked up by two Hispanic males and he was taken to rent the truck. The two Hispanic males left Mr. Fantozzi at the hotel and took the U-Haul that he had rented, and they returned it – that was on December the 6th. They returned it on December the 11th, 2000, and then instructed him what route to take, and to call once he got through the checkpoint.
>
> He was also told, "Take the truck to Greenville, South Carolina." He was told to check into a motel when he got there and to call them when he was there. He was also instructed to tell the people at the checkpoint that the cargo inside was his and that he was helping his girlfriend move.

(R. Tr. at 27-28.)

The Court asked Fantozzi if the prosecutor's statement was correct. Fantozzi responded that he had not loaded the truck, and that he was paid $600, not $500. He said that basically everything else was correct. (R. Tr. at 28, 30.) The Court specifically inquired as to whether he knew he had

9

some kind of contraband, and Fantozzi responded: "Yes, Your Honor. I suspected it, yes, ma'am." (R. Tr. at 30.)

Despite his admissions at rearraignment, at sentencing, Fantozzi began to equivocate about whether or not he was guilty of the offense. He told the Court that he "really didn't know what was in that truck." (S. Tr. at 46.) The Court asked if he wanted to withdraw his plea. (S. Tr. at 50.) Fantozzi said no, and then spoke with his attorney. (S. Tr. at 50.) After more discussion, the Court indicated that Fantozzi was "going to talk himself out of acceptance here in just a minute." (S. Tr. at 53.) At that point, the prosecutor interjected on Fantozzi's behalf:

> MR. PATTERSON: Well, I'm kind of arguing on his behalf here, because he did cooperate with us. But from the start of this whole case, he always told officers that he didn't know what was in there. He figured there was drugs in there, but he didn't know what kind.
>
> THE DEFENDANT: That's what I told the Probation Officer, Your Honor.
>
> MR. PATTERSON: And he has said that all along. . . .

(S. Tr. at 53.) After additional questioning from the Court, the prosecutor explained further:

> MR. PATTERSON: ... The tapes that – he made tape-recorded phone calls to co-defendants in this case. And those tapes verified that he did not know what kind of drugs were in there. He asked them –
>
> THE COURT: But he knew there were drugs.
>
> MR. PATTERSON: Well, he admitted that, but he – but the tapes verified, he said – he called one of the co-defendants and he said, on the tape, he said, "What have I got in here? Cocaine, heroin, marijuana, what?" And the co-defendant said, "Don't talk like that on the phone. I'll tell you later what you're carrying. Just don't talk like that on the phone." And so – and there was [sic] other conversations that sort of backed up the fact that he didn't know exactly what was in there. So to that extent, I believe that he is being honest right now.
>
> THE DEFENDANT: Your Honor. Your Honor, I told Ms. Moore, Your Honor, I knew that there was something in there. I just didn't know how much or what kind. ...

10

(S. Tr. at 54.) The Court ultimately agreed to give the defendant credit for acceptance of responsibility.

It is therefore clear from the record that the prosecutor, the Court, Fantozzi and his counsel were all aware of the tape-recorded conversations he relies upon so heavily to establish his innocence. Moreover, it is also clear that Fantozzi knew he was transporting drugs. The fact that he did not know the precise type of drug he was carrying does not make him innocent of the offense. To prove a defendant's guilt who is charged with a violation of 21 U.S.C. § 841(a), the government must prove that the offense involved a specific type of drug and the quantity, but the government is not required to prove that a defendant knew the type and quantity of drug involved. United States v. Gamez-Gonzalez, 319 F.3d 695, 699-670 (5th Cir. 2003). Rather, it is sufficient if the government proves that the defendant was aware that some controlled substance was involved. Gamez-Gonzalez, 319 F.3d at 700.

Fantozzi admitted that he knew he was carrying a controlled substance. (See R. Tr. at 30; S. Tr. at 53-55; PSR at ¶¶ 4-6). Thus, he was guilty of the charged offense even if he did not know the precise type of drug or the quantity. See Gamez-Gonzalez, 319 F.3d at 699-70. Accordingly, all of his claims that rely on his "actual innocence" fail as a matter of law.

## C.   Unknowing and Involuntary Guilty Plea

Fantozzi's first claim is that his guilty plea was not knowing and voluntary. As previously noted, he claims that the government could not have proved the charge against him because he did not know the precise type of contraband he was carrying. Thus, he claims that the government should not have prosecuted him and, if he had understood this, he would not have pleaded guilty. As noted in the preceding section, Fantozzi's misunderstands the elements of his offense. To support his conviction, the government was not required to prove that Fantozzi had knowledge of the specific drug type and quantity he was transporting, but only that he had knowledge he was transporting drugs. See Gamez-

11

Gonzalez, 319 F.3d at 700. There was ample evidence of that, and Fantozzi himself admits to knowing he was transporting drugs. (See supra at p. 11.) Thus, his claim is without merit.

Moreover, the record in this case flatly contradicts Fantozzi's claim that his plea was not knowing and voluntary. At the time that he pleaded guilty, the Court properly and fully assured itself that his plea was knowing and voluntary, as a trial judge is required to do. See James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995); Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991) (defendant must have a full understanding of what the plea connotes and of its consequences). The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. United States v. Garcia, 983 F.2d 625, 627-28 (5th Cir. 1993). In this case, Fantozzi's own testimony makes clear that his guilty plea was knowing and voluntary and contradicts any belated assertion of a lack of understanding of the consequences of pleading guilty.

At his rearraignment, Fantozzi testified in open court that he had had enough time to talk with his attorney, that his attorney had answered all of his questions, that his attorney had seen him in jail and took his phone calls, that he was able to communicate completely with his attorney, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 10-11.) The Court then informed Fantozzi of the charge against him and he testified that he understood it. (R. Tr. at 11.) He further testified that his attorney had discussed the charge completely with him. (R. Tr. at 11.)

Additionally, prior to accepting Fantozzi's plea, the Court informed him about his trial rights and that if he pleaded guilty, he would be giving up these rights. (R. Tr. at 13-16.) Fantozzi testified that he understood. (R. Tr. at 16.)

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Fantozzi the maximum punishment that he might receive. Specifically, the Court informed him that he could be imprisoned for up to 40 years in the Bureau of Prisons, plus a fine up to $2 million, and that he could face up to

a lifetime of supervised release. (R. Tr. at 20-21.)  Once again, Fantozzi testified that he understood. (R. Tr. at 21.)

Fantozzi further testified that he had discussed the federal Sentencing Guidelines with his attorney, and had discussed how those guidelines might apply in his case . (R. Tr. at 21.)  The Court explained the concept of relevant conduct and also explained how Fantozzi's criminal history could result in a higher sentence.  Fantozzi testified that he had discussed those issues with his attorney and that he understood them. (R. Tr. at 21-23.) Fantozzi also testified that he understood that his attorney's opinion of the guidelines was not necessarily the same as the Court's, and that the Court could impose a sentence more severe or less severe than the sentence called for by the guidelines.  (R. Tr. at 23.)

In response to questioning by the Court, Fantozzi also told the Court that his plea was voluntary.  That is, he testified that no one had forced him in any way to plead guilty, that no one had made any promises to him other than what was in his plea agreement, and that his decision to plead guilty was entirely voluntary. (R. Tr. at 24.)

Fantozzi's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).   Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Fantozzi's sworn statements preclude the relief he seeks here.  He was not coerced, he understood the charges against him, he understood the trial rights he was giving up, he understood the possible maximum sentence he faced, and he understood how the sentencing guidelines would operate generally.  Cf. Garcia, 983 F.2d at 627-28 (setting forth core concerns in guilty plea proceedings).  Nothing in his testimony suggests that his plea was not knowing or voluntary, as he now alleges.

For all of the foregoing reasons, Fantozzi's first claim fails.

**D.      Ineffective Assistance Claims**

Fantozzi's second and third claims are both claims of ineffective assistance of counsel. Such claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

          **1.      Claim of Ineffective Assistance of Counsel At the Plea**

Fantozzi's second claim is that his counsel erroneously advised him to plead guilty, despite the fact that there was "overwhelming evidence that supported [Fantozzi's] innocence." (D.E. 72 at 10.) In support of his claim, he points again to the tape-recorded conversation that arguably shows that Fantozzi did not know the precise type of drug he was carrying.

For the reasons set forth in Section IV.B. supra, this claim fails. The fact that Fantozzi did not know the precise type of drug he was carrying does not support his innocence. Instead, there was in fact overwhelming evidence of Fantozzi's guilt. Based on the record, his counsel's advice to plead guilty was not at all deficient. Instead, pleading guilty secured Fantozzi a reduction for acceptance of responsibility and, based on his cooperation, he received a substantial reduction in his sentence.

Because he cannot establish deficiency, this claim fails.

### 2.     Ineffective Assistance of Counsel on Appeal

Fantozzi's third ground for relief is that his appellate counsel, Albert Pena, was constitutionally ineffective because Pena failed to raise certain arguments on appeal.[6] All of these claims fail because Fantozzi cannot establish the second Strickland prong of actual prejudice. "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)). This is a showing Fantozzi has not made.

#### a.     Failure to argue Fantozzi's actual innocence

First, Fantozzi claims that Mr. Pena should have raised an actual innocence claim. Again, for the reasons set forth in Section IV.B., Fantozzi was not "actually innocent" of the offense. Thus, any claim of actual innocence would have been meritless and a failure to raise it does not constitute

---

[6] Fantozzi also claims that he had conversations with Pena in which Pena admitted his own ineffectiveness. (D.E. 72 at 14.) There is no sworn testimony from Pena confirming this. The issue was discussed, however, at a hearing held before United States Magistrate Judge Owsley to address a motion for new counsel filed by Fantozzi after the conclusion of his appeal. At that hearing, Pena stated that he had been suffering from serious medical problems throughout the time-frame of Fantozzi's appeal. He did not believe, however, that there were any arguments he should have made to the appellate court and did not. (D.E. 70, Tr. of 9/13/05 telephone conference at 7-11). Pena admitted, however, that he "may have" said that he did not "do the right thing" and that he was "going to file ineffective assistance of counsel." (Id. at 11-12).

Whether or not Pena told Fantozzi that he had rendered ineffective assistance is not the issue before this Court. Even if Pena believed he could have done more on appeal, that fact does not establish that Fantozzi actually received constitutionally deficient counsel. While counsel's admission of his own ineffectiveness may provide some evidence in support of such a claim, it is not dispositive. Rather, whether a defendant has been denied effective assistance of counsel requires "deficient performance by counsel resulting in prejudice, ... with performance being measured against an 'objective standard of reasonableness,' ... 'under prevailing professional norms." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (internal citations to Strickland omitted). As discussed herein, the Court does not find that any of the deficiencies alleged by Fantozzi constitute ineffective assistance of counsel under Strickland because, even if his counsel had raised these additional claims, Fantozzi would not have prevailed on any of them.

ineffective assistance. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

### b. Failure to argue ineffective assistance of trial counsel

Fantozzi's claim that his appellate attorney was ineffective because he failed to assert a claim of ineffective assistance of trial counsel is similarly infirm. As set forth in Section IV.D.1. supra, Fantozzi has not shown that his trial counsel was ineffective. Accordingly, a failure to raise this claim on appeal does not constitute ineffective assistance. Kimler, 167 F.3d at 893. Moreover, as the government notes in its response, ineffective assistance claims are not typically raised or considered on direct appeal, because the record is usually insufficient to support them. United States v. Packer, 70 F.3d 357, 361 (5th Cir. 1995); see also United States v. Delagarza-Villarreal, 141 F.3d 133 (5th Cir. 1997) (citing Packer and other Fifth Circuit authority for the same proposition). This, too, shows that his appellate counsel was not deficient for not raising an ineffective assistance of trial claim.

### c. Failure to argue that the government and the Court breached sentencing "agreements" with Fantozzi

The remaining arguments that Fantozzi claims his counsel should have raised on appeal were both set forth for the first time in his reply to the government's motion to dismiss. Again, because both arguments are meritless, it was not error of his counsel to not argue them on appeal. First, his claim that the government breached its plea agreement with him by not recommending the low end of the guidelines is flatly contradicted by the record. The government recommended the low end of the guideline range as determined by the PSR, and further recommended a fifty percent reduction in that sentence due to Fantozzi's substantial assistance. (S. Tr. at 57.)

Similarly, his claim that the Court breached a "promise" to give him a fifty percent reduction in sentence is without foundation. As an preliminary matter, there were no "promises" made to the defendant at any time by the Court regarding his sentence. Moreover, while the Court said on the record that it intended to give him "half off," (S. Tr. at 58), it made that statement before determining what the guideline range would be or how much of an upward adjustment was warranted in the case. Once the Court determined that it would only depart upwards one level (although it thought a larger departure could easily have been supported (S. Tr. at 68)), it determined that a full fifty percent reduction was not warranted. (S. Tr. at 69 ("I'm going to downwardly depart, grant your motion for 5K, to 150 months, which is a substantial downward departure from the 262, which I think is more appropriate. In fact, it is not even near as appropriate as what it should be.").) Further supporting the Court's decision not to give a full fifty percent reduction was the fact that Fantozzi had not testified at any trial. (S. Tr. at 68-69).

Accordingly, the Court's statement at sentencing, prior to determining the appropriate guideline range and prior to imposing sentence, that it intended to give him half off, does not constitute a binding promise. The Court's sentencing of Fantozzi was proper. If his counsel had raised this argument on appeal, Fantozzi would not have been entitled to relief.

For all of the foregoing reasons, Fantozzi's claim of ineffective assistance of appellate counsel fail.

### E.  **Prosecutorial Misconduct Based on Use of Perjured Testimony**

In his fourth and final claim, Fantozzi argues that the Assistant United States Attorney who prosecuted him knowingly used inconsistent and perjured testimony to obtain an indictment against him. (D.E. 72 at 15.) He does not have any direct proof of perjured testimony. Rather, this claim once again is premised on Fantozzi's erroneous belief that he is not guilty of the charged offense because he did not know he was carrying marijuana, nor did he know how much. That is, he believes

17

that the person who hired him must have told the government that Fantozzi knew he was transporting marijuana, because Fantozzi thinks that is the only way he could have been indicted. He claims that the government knew such testimony was perjured because of the tape-recorded conversations where the same individual indicates that Fantozzi did not know what drug he was carrying.

As noted supra at Section IV.B., his underlying premise is faulty. There is no evidence in the record that anyone offered false testimony saying Fantozzi knew he was transporting marijuana, nor was any such testimony needed. Fantozzi's own admissions that he knew he was transporting a drug, and the fact that he was found in sole possession of 365 kilograms (net weight) of marijuana, were sufficient evidence to indict him. Accordingly, this claim, like all of his other claims, does not entitle Fantozzi to relief.

### F.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Fantozzi has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Fantozzi's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Fantozzi is not entitled to a COA as to his claims.

## V. CONCLUSION

For the aforementioned reasons, Fantozzi's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 72) is DENIED. Additionally, Fantozzi is DENIED a Certificate of Appealability.

ORDERED this 23rd day of February, 2007.

_____
Janis Graham Jack
United States District Judge